# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM A. MALONE, # B-52858, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17-cv-935-SMY |
| ) | |
| ILLINOIS DEPT. of CORRECTIONS, ) | |
| PINCKNEYVILLE CORRECTIONAL ) | |
| CENTER, ) | |
| THOMAS SPILLER, ) | |
| C/O BELFORD, ) | |
| DONNA HEIDLEMANN, ) | |
| MAJOR CLELAND, ) | |
| and JOHN DOE (1-7), ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

## BACKGROUND

Plaintiff William A. Malone, who is currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff raises a number of claims in the Complaint (Doc. 1) and in his "Motion for Protection Order" (Doc. 2), including that the defendants have improperly housed him in an overcrowded cell that violates the Americans with Disabilities Act; that he has been issued "illegal" disciplinary reports and punished with solitary confinement as well as the loss of good conduct credits; and that he has been denied placement in protective custody.

## DISCUSSION

### IFP Motion

Before the Court screens the Complaint or considers the Motion for Protection Order, it must first address Plaintiff's request to litigate this action without prepaying the full filing fee. The Prison Litigation Reform Act ("PLRA") requires prisoners to pay the full filing fee. *See* 28 U.S.C. § 1915(b)(1). However, a prisoner who is unable to prepay the full amount may seek permission to pay the fee over time through monthly trust fund account deductions.

Plaintiff filed a Motion for Leave to Proceed *in forma pauperis* ("IFP Motion") (Doc. 3) along with his Complaint on August 31, 2017. Plaintiff claims that he is unable to pay the filing fee, but he has failed to submit his prisoner trust fund account statement for the 6 months prior to the filing of this action, as required by 28 U.S.C. § 1915(a)(2) (Doc. 6). Despite the absence of that information, the Court will review Plaintiff's eligibility to proceed IFP in light of his litigation history.

The PLRA sets limits on a prisoner's ability to obtain IFP status. Pursuant to 28 U.S.C. § 1915(g):

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). In other words, a prisoner who has "struck out" by filing three or more cases that were dismissed for one of the reasons set forth under § 1915(g) cannot proceed IFP unless he faces imminent danger of serious physical injury. *Id*.

A review of documents filed in the electronic docket of this Court and the Public Access to Court Electronic Records ("PACER") website (www.pacer.gov) discloses that Plaintiff has

already had 10 other cases dismissed as frivolous or for failure to state a claim upon which relief can be granted.[1] *See Malone v. Ardis*, No. 13-cv-1543 (C.D. Ill. Dec. 3, 2013); *Malone v. City of Peoria*, 13-cv-1559 (C.D. Ill. Feb. 20, 2014); *Malone v. Hill et al.*, No. 16-cv-973 (S.D. Ill. Oct. 26, 2016); *Malone v. Fritts, et al.*, No. 16-cv-200 (S.D. Ill. Nov. 7, 2016); *Malone v. Unknown Party*, No. 16-cv-974 (S.D. Ill. Nov. 8, 2016); *Malone v. Duvall*, No. 16-cv-977 (S.D. Ill. Nov. 29, 2016); *Malone v. IDOC, et al.*, No. 16-cv-978 (S.D. Ill. Dec. 8, 2016); *Malone v. Shah, et al.,* No. 16-cv-972 (S.D. Ill. Dec. 30, 2016); *Malone v. Orange Crush*, No. 16-cv-975 (S.D. Ill. Dec. 30, 2016); and *Malone v. Groves, et al.*, No. 16-cv-979 (S.D. Ill. Jan. 10, 2017). Plaintiff only included two of these cases in the summary of his litigation history filed with this case. (Doc. 1-1).

A prisoner-plaintiff's failure to fully disclose his litigation history, particularly when he seeks leave to proceed IFP, may be grounds for immediate dismissal of the suit. *Ammons v. Gerlinger*, 547 F.3d 724, 725 (7th Cir. 2008) (termination of suit is an appropriate sanction for struck-out prisoner who took advantage of court's oversight and was granted leave to proceed IFP); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999) (litigant who sought and obtained leave to proceed IFP without disclosing his three-strike status committed a fraud upon the court). Here, Plaintiff made an attempt to list his previous lawsuits when he filed this case (Doc. 1-1). He identified the two 2013 cases which resulted in "strikes" (*Malone v. Ardis*, No. 13-cv-1543 (C.D. Ill. Dec. 3, 2013); *Malone v. City of Peoria*, 13-cv-1559 (C.D. Ill. Feb. 20, 2014)), but did not mention the fact that he was assessed strikes in those cases. (Doc. 1-1, p. 1). He also included 7 other cases filed in 2012 and 2013 which did not result in strikes. However, he omitted any mention of the 2016 cases that resulted in 8 additional strikes. Plaintiff's

---

[1] The Court may take judicial notice of court documents, which are public records. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

explanation for his failure to include the full litigation history is that his legal paperwork has been destroyed or lost at the hands of prison officials. (Doc. 1-1, pp. 1-3). Nevertheless, because Plaintiff has 10 "strikes" for purposes of § 1915(g), he may not proceed IFP in this case unless he demonstrates that he is under imminent danger of serious physical injury.

"Imminent danger" within the meaning of 28 U.S.C. § 1915(g) requires a "real and proximate" threat of serious physical injury to a prisoner. *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003) (citing *Lewis v. Sullivan*, 279 F.3d 526, 529 (7th Cir. 2002)). In general, courts "deny leave to proceed IFP when a prisoner's claims of imminent danger are conclusory or ridiculous." *Id*. at 331 (citing *Heimermann v. Litscher*, 337 F.3d 781, 782 (7th Cir. 2003)). Additionally, "[a]llegations of past harm do not suffice" to show imminent danger. Rather, "the harm must be imminent or occurring at the time the complaint is filed" and when prisoners "allege only a past injury that has not recurred, courts deny them leave to proceed IFP." *Id*. at 330 (citing *Abdul-Wadood v. Nathan*, 91 F.3d 1023 (7th Cir. 1996)).

Plaintiff claims that he is under imminent danger. However, the Complaint, Motion for Protection Order, and the IFP motion do not set forth factual allegations to support that conclusion.

In his Motion for Protection Order (Doc. 2), Plaintiff complains that he has been "constantly issued illegal ODR's (Offender Disciplinary Reports) since May 13, 2013," that resulted in his placement in solitary confinement. (Doc. 2, p. 1). He claims that being housed in an "illegal 4-man cell" which includes both wheelchair-bound inmates (such as Plaintiff) and non-physically-challenged inmates places him in imminent danger due to overcrowding, "theft, extortion and mayhem" and that the able-bodied cellmates have inflicted upon Plaintiff and other physically-challenged cellmates. *Id.* Plaintiff does not describe any specific incidents or time

4

frames to explain what he means by "mayhem," or whether that includes any imminent threat of physical harm.

Plaintiff has requested to be placed into Protective Custody ("PC"), but instead has been retaliated against with disciplinary action, punitive segregation and loss of good-time credits. (Doc. 2, pp. 1-2). To remedy this situation, Plaintiff seeks placement in administrative segregation or a transfer to another prison that has "ADA legal wheelchair space celling." (Doc. 2, p. 2).

The Complaint repeats some of the above information regarding cell overcrowding and alleged danger. (Doc. 1, pp. 2-3). Plaintiff also asserts that Defendants have violated the Rehabilitation Act and Americans with Disabilities Act, as well as the First and Eighth Amendments. (Doc. 1, p. 2). He further asserts that Belford and John Doe Defendants have made racist and degrading comments to him on many occasions. (Doc. 1, p. 4).

Under "Count One" of the Complaint, Plaintiff claims that Defendants have posted his criminal case history (and that of his father, which he says has been confused with his own) in the prison's law library, and have spread information throughout the prison labeling him a pedophile, snitch and stoolpigeon, thus exposing him to imminent danger. (Doc. 1, p. 2). Again, he does not indicate the time frame when this publication took place. He alleges that because he has been denied PC placement, Defendants have put him in the position of having a "Hopkins choice" of either remaining in general population housing where he believes he is in danger, or "opting for potentially ongoing, indefinite atypical punitive solitary confinement celling" where his personal property will be ransacked and destroyed. (Doc. 1, pp. 7, 15).

"Count Two" asserts that Defendants have failed to protect him from imminent danger by refusing to place him in PC and denying or ignoring his "flurry" of identical grievances and

5

memos from 2013 to the present. (Doc. 1, pp. 7-8; Doc. 1-3, pp. 6-7, 13-15). He claims he was assaulted by another inmate in December 2016 (Doc. 1, p. 8) and that on January 16, 2017, Lt. Webb (who is not a defendant) took him to segregation for requesting PC. *Id.*

In "Count Three," Plaintiff alleges that his grievances from 2011-2016 requesting PC, a transfer and better wheelchair accommodations, were stonewalled and/or denied by Flatt, Benton, Lashbrook, Spiller, Love and Thomas (among these individuals, only Spiller is named as a defendant herein). (Doc. 1, pp. 8-9). "Count Four" reiterates Plaintiff's allegations that Belford and Heidlemann posted his criminal information in the law library and that it was not removed despite Plaintiff's requests and another officer's assurances that it would be taken down. (Doc. 1, pp. 9-10).

"Count Five" sets forth Plaintiff's assertion that Belford distributed Plaintiff's criminal case documents to staff and inmates. (Doc. 1, p. 10). "Count Six" alleges that Belford repeatedly shook down Plaintiff's property and allowed it to be destroyed and taken by other prisoners, singling him out for that treatment in retaliation for Plaintiff's engagement in litigation. (Doc. 1 p. 10). "Count Seven" asserts a claim that Plaintiff submitted a FOIA request that was denied. (Doc. 1, p. 11).

The Complaint concludes with a request for a preliminary injunction to require Defendants to house Plaintiff in administrative segregation. (Doc. 1, pp. 11-15). He lists his numerous physical ailments and claims that he should have been seen by a licensed clinician within 2 hours after being placed in solitary confinement. (Doc. 1, pp. 11-12). He asserts that since 2009, twenty inmates have died in custody at Pinckneyville after having been labeled as a pedophile and/or a snitch. (Doc. 1, pp. 13-14). He claims that another inmate who has tried to kill him and is supposed to be kept separate from Plaintiff was placed back in Pinckneyville.

(Doc. 1, p. 15). In addition, Plaintiff seeks money damages. (Doc. 1, pp. 15-16).

Some of the allegations summarized above suggest that Plaintiff may have faced danger of physical harm. However, nothing in his documents shows that Plaintiff is under *imminent* danger of serious physical injury. *See* 28 U.S.C. § 1915(g). Furthermore, Plaintiff has previously raised similar claims of danger in other lawsuits in this Court, one of which is still pending.

The most recent physical attack mentioned by Plaintiff allegedly occurred in December 2016. (Doc. 1, p. 8). Plaintiff currently has a pending case, *Malone v. Heideman, et al.*, Case No. 15-cv-1104-MJR-SCW (S.D. Ill. filed Oct. 6, 2015), in which he alleges that he was attacked by a cellmate in September 2015 after Officers Belford, Spiller, Furlow, Lind and Lawless placed the inmate in his cell and/or failed to protect Plaintiff from the attacker. Also included in that lawsuit is Plaintiff's claim that in April 2014, Belford publicized Plaintiff's criminal history information to other inmates, allegedly in order to induce them to attack Plaintiff. It appears that Plaintiff has recycled these allegations in his Complaint in the instant case, but without connecting any relevant dates with his claims. Because Plaintiff does not state otherwise, the Court concludes that attack alleged in this case dates back to either September 2015 or December 2016 – neither of which suggests an "imminent" danger of physical harm.

Likewise, the claim that Plaintiff was placed in danger when he was labeled a pedophile and/or a snitch dates back to 2014. These matters may be addressed in due course in Case No. 15-cv-1104. But they do not suffice to demonstrate that Plaintiff is currently in imminent danger of serious physical injury so as to proceed IFP in the present case.

Plaintiff's claim that he has been illegally housed in a 4-man cell with non-disabled prisoners was raised in *Malone v. IDOC*, Case No. 15-cv-1304-MJR-SCW (S.D. Ill. filed Nov.

24, 2015). He also alleged in that case that Belford had placed him in danger by disclosing his criminal history, and he sought injunctive relief to be placed in safe housing. In December 2015, the Court determined that the case merited further consideration, and ordered the defendants to answer the Complaint. However, on August 15, 2017, Case No. 15-cv-1304 was dismissed with prejudice as a sanction for Plaintiff's intentional failure to disclose his extensive litigation history.

In addition to Plaintiff's claims that he has been denied placement in Protective Custody, he states that on several occasions, he faced a "Hopkins Choice" of either accepting his general population housing assignment, or "opting for . . . punitive solitary confinement." (Doc. 1, pp. 7, 15). It appears that this punitive confinement was the result of disciplinary action, which Plaintiff claims to be improper. Nonetheless, a placement in segregation or solitary confinement would remove Plaintiff from the cell assignment with the non-disabled inmates whom he wished to avoid. The fact that Plaintiff had the opportunity to refuse his housing assignment and to be placed elsewhere, even if that was a punitive placement, demonstrates that he could get out of what he perceived to be harm's way. This scenario does not support a claim that Plaintiff was facing imminent danger of serious physical injury at the time he brought this action.

Finally, the allegation that an inmate who has threatened Plaintiff in the past, and who is supposed to be kept separate from Plaintiff, was returned to Pinckneyville is too vague to support a conclusion of imminent danger. Plaintiff does not say when this person came back to Pinckneyville, nor does he say whether the person is housed anywhere near Plaintiff or may otherwise pose a current threat to him. Again, Plaintiff appears to have the ability to invoke placement in segregation if he were to refuse a housing assignment.

None of the other claims raised in the Complaint (improper disciplinary action, loss of

good-conduct credits, violations of the Rehabilitation Act and/or the ADA, verbal harassment, denial of grievances, shakedowns and destruction of property, and denial of a FOIA request) suggest that Plaintiff faces any imminent danger of serious physical injury. Additionally, some of these claims would likely be subject to severance into separate cases, for which an additional filing fee would be assessed. *See George v. Smith*, 507 F.3d 605 (7th Cir. 2007) (unrelated claims against different defendants belong in separate lawsuits).

## Disposition

Plaintiff has not shown that he is under imminent danger of serious physical injury so as to escape the "three-strikes" rule of §1915(g), therefore, he cannot proceed IFP in this case. Accordingly, Plaintiff's Motion for Leave to Proceed IFP in this case (Doc. 3) is **DENIED**.

It is **HEREBY ORDERED** that Plaintiff shall pay the full filing fee of $400.00 for this action within **twenty-one (21) days** of the date of entry of this Order (on or before **December 26, 2017**). If Plaintiff fails to comply with this payment order in the time allotted by the Court, this case will be dismissed. *See* FED. R. CIV. P. 41(b); *Ladien v. Astrachan*, 128 F.3d 1051, 1056-57 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466, 468 (7th Cir. 1994). Additionally, the Court shall order payments to be deducted from Plaintiff's prisoner trust fund account in accordance with § 1915(b) until the $400.00 fee is paid in full.

The Court reserves ruling on Plaintiff's Motion for Protection Order (Doc. 2) until such time as Plaintiff pays the filing fee in full.

It is **FURTHER ORDERED** that if Plaintiff files any future case in this Court, he **SHALL DISCLOSE** his complete litigation history in his complaint, including the fact that he has incurred ten (10) "strikes" within the meaning of 28 U.S.C. §1915(g). If Plaintiff fails to make this disclosure, any case in which his litigation history is omitted shall be subject to

immediate dismissal, and Plaintiff shall continue to be liable for the full filing fee despite the dismissal.

As demonstrated by his extensive litigation history, Plaintiff has filed a number of lawsuits in this Court which have resulted in substantial unpaid filing fees. After he "struck out" in October 2016, Plaintiff filed 5[2] additional lawsuits in this Court (including this case) in the short space of time between August 23, 2017, and October 2, 2017. One of the other 4 cases contains a claim that the Court deemed worthy of further review based on a showing of possible imminent danger of serious physical injury. The other three of those recent cases have been dismissed.

A struck-out prisoner who continues to file lawsuits that fail to demonstrate an imminent danger of serious physical injury, and who is unable to pay the filing fees, runs the risk that the Court may restrict him from filing any future lawsuit until his outstanding filing fees are paid in full. *See Newlin v. Helman*, 123 F.3d 429, 437 (7th Cir. 1997) (citing *Support Sys. Int'l, Inc. v. Mack*, 45 F.3d 185 (7th Cir. 1995)) ("A prisoner who becomes ineligible under § 1915(g) to continue litigating *in forma pauperis*, and who then files additional suits or appeals yet does not pay the necessary fees, loses the ability to file future civil suits."), *overruled on other grounds by Lee v. Clinton*, 209 F.3d 1025 (7th Cir. 2000); *Sloan v. Lesza*, 181 F.3d 857, 859 (7th Cir. 1999) ("[U]npaid docket fees incurred by litigants subject to § 1915(g) lead straight to an order

---

[2] In addition to this case, Plaintiff filed *Malone v. Baldwin*, Case No. 17-cv-895-SMY (Aug. 23, 2017); *Malone v. IDOC*, Case No. 17-cv-952-NJR-DGW (Sept. 6, 2017); *Malone v. Wexford*, Case No. 17-cv-1062-MJR (Oct. 2, 2017); and *Malone v. Ship*, Case No. 17-cv-1064-DRH (Oct. 2, 2017). Based on the pleadings in Case Nos. 17-1062 and 17-1064, it was unclear whether they were intended to be a single case, or indeed whether Plaintiff intended to file them at all. Plaintiff was ordered to clarify his intent in both those cases and to file an amended complaint if he desired to proceed. He failed to respond, thus both cases (Nos. 17-1062 and 17-1064) were dismissed with prejudice on November 16, 2017. Case No. 17-cv-895-SMY was dismissed on November 29, 2017, as a sanction for Plaintiff's failure to disclose his litigation history.

forbidding further litigation."). Plaintiff should be mindful that a filing ban may be imposed on him if he continues to file lawsuits that fail to overcome the § 1915(g) hurdle.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 1, 2017**

s/ STACI M. YANDLE
United States District Judge
